# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### SALISBURY DIVISION

| | |
|---|---|
| **CRAIG CUNNINGHAM,** | |
| *Plaintiff*, | |
| **v.** | **Case No. 1:24-CV-00221** |
| **WALLACE & GRAHAM, P.C, MONA LISA WALLACE, BILL GRAHAM, WHITNEY WALLACE WILLIAMS, MARK P. DOBY, RHINE LAW FIRM, P.C., JOEL R. RHINE, SOKOLOVE LAW, LLC, AND RICKY A. LEBLANC,** | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Wallace & Graham, P.C., Mona Lisa Wallace, Bill Graham, Whitney Wallace Williams, Mark P. Doby, Rhine Law Firm, P.C., and Joel R. Rhine, by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss Plaintiff Craig Cunningham's ("Plaintiff") Complaint in its entirety.

Defendant Ricky A. LeBlanc ("LeBlanc"), by counsel and by special appearance, pursuant Federal Rules of Civil Procedure 12(b)(2), (5), and (6), moves to dismiss Plaintiff's Complaint in its entirety.

Finally, Defendant Sokolove Law, LLC, by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Count I of the Complaint with the exception of the October

2, 2023 call at 11:12 a.m., and to dismiss Count III of the Complaint with prejudice for failure to state a plausible claim for relief.

## **INTRODUCTION**

Plaintiff Craig Cunningham's[1] Complaint suffers from numerous deficiencies that require dismissal.  **First**, Plaintiff has not properly served Defendant Ricky A. LeBlanc and has not pled that the Court can exercise personal jurisdiction over LeBlanc, a Massachusetts resident.

**Second**, Counts I and II of the Complaint must be dismissed as to all of the individual and corporate defendants with the exception of Sokolove Law.  It is blackletter law that individuals are shielded from liability, absent certain circumstances not relevant here, when they do business in the corporate form.  As Plaintiff has acknowledged, each individual defendant is associated with a company – and each company is named as a defendant.  Thus, he cannot assert TCPA claims against them individually.  Further, Plaintiff has not plausibly alleged a viable TCPA violation against corporate defendants Wallace & Graham, P.A. or Rhine Law Firm because he has not pled that either firm called him or that either firm was involved in an agency relationship with Sokolove Law.  Indeed, Plaintiff has not pled any facts demonstrating that either Wallace & Graham or Rhine Law Firm were even aware that Plaintiff purportedly received telephone calls. This falls far short of the plausible facts required to plead vicarious liability under the TCPA.

---

[1] Per public records, Plaintiff, a Texas resident, has filed ***nearly 200*** complaints since 2014, each seeking relief under the federal Telephone Consumer Protection Act ("TCPA"), state-equivalent calling statutes, and other state consumer protection statutes. He has filed mostly in the Eastern District of Texas, or the Middle District of Tennessee, as well as in various other federal district courts and state courts across the country, some of which are pending. The instant case is also not his first endeavor into this District, although Plaintiff resides in the Western District of Texas. (ECF No. 1, hereinafter "Compl.," ¶ 4.)

**Third**, even if Plaintiff could assert a viable TCPA claim against the individual or corporate defendants, Count I of Plaintiff's Complaint is deficient for the independent reason that Plaintiff has not plausibly alleged use of the specific telephony regulated by the TCPA. The TCPA regulates use of an "automatic telephone dialing system," (an "ATDS") and the Supreme Court recently confirmed that an ATDS requires random or sequential number generation – the hallmark of haphazard and indiscriminate calls intended to reach *anyone*, not calls directed to specific people at specific telephone numbers. Yet Plaintiff's own Complaint reveals that, after he received a call on October 2 at 11:12 a.m., every single call thereafter was intentionally trying to reach *him* at his telephone number, confirming that Defendants did not and could not have used an ATDS to contact him. These calls, as Plaintiff himself acknowledges, were not random or indiscriminate. The calls were intended to further the relationship that Plaintiff himself has alleged. Thus, Plaintiff has not pled a plausible TCPA violation beyond the very first call.

**Fourth**, Plaintiff's threadbare Complaint cannot support a claim for violation of the North Carolina Telephone Solicitations Act ("NCTSA") because Plaintiff affirmatively pled that he is a resident of Texas. Plaintiff does not plead any facts suggesting that he, as a Texas resident, receives the benefit of North Carolina law created for the protection of *North Carolina residents*. Moreover, Plaintiff does not plead any facts demonstrating that he received calls from the telephony regulated by the NCTSA. Amendment cannot save this claim and dismissal with prejudice is required.

Accordingly, Defendants request that the Court: 1) dismiss Plaintiff's Complaint in its entirety and with prejudice as to Defendants Wallace & Graham, P.A., Mona Lisa Wallace, Bill Graham, Whitney Wallace Williams, Mark P. Doby, Rhine Law Firm, P.C., Joel R. Rhine, and Ricky A. LeBlanc; 2) dismiss Count I of Plaintiff's Complaint against Sokolove Law, LLC with

the exception of the October 2, 2023 call at 11:12 a.m.; and 3) dismiss Count III of Plaintiff's Complaint against Sokolove Law.

**ARGUMENT**

I.    **Dismissal of Defendant LeBlanc is required under Rules 12(b)(2), (5), and (6).**

    A.    **The Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) as to LeBlanc because Plaintiff has not served him.**

Plaintiff's Complaint must be dismissed as to Defendant Ricky A. LeBlanc because Plaintiff failed to properly serve LeBlanc in accordance with Rule 4. Federal Rule of Civil Procedure 4 governs the means of properly effecting service of a summons and complaint. Rule 4(a) requires the summons to be signed by the Clerk of Court and bear the Court's seal. *See* Fed. R. Civ. P. 4(a)(1)(F), (G). Rule 4(c)(2) provides that "[a]ny person who is at least 18 years old and not a party may serve a summons and complaint." "[F]ailure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Pitts v. O'Geary*, No. 5:13-cv-116, 2014 WL 229350, at *3 (E.D.N.C. Jan. 21, 2014) (quoting *Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998)).

Plaintiff has not demonstrated that he has met either of these requirements. LeBlanc has never been served in this matter. Plaintiff has not filed a return of service on the Court's docket. *See generally* Dkt. Plaintiff has not served LeBlanc in accordance with Rule 4 and, as a result, dismissal under Rule 12(b)(5) is required.

    B.    **The Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because the Court cannot exercise personal jurisdiction over LeBlanc.**

However, even if Plaintiff served his Complaint on LeBlanc properly, or at all, dismissal would be required under Rule 12(b)(2) because this Court lacks personal jurisdiction over LeBlanc. On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2),

4

the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state. *See Consulting Engineers Corp. v. Geometric Ltd.,* 561 F.3d 273, 276 (4th Cir. 2009) ("[T]he plaintiff bears the burden making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge.").

           i.    <u>Personal jurisdiction requires systematic and continuous contacts with the State</u>.

"To determine whether personal jurisdiction is proper the court must engage in a two-part inquiry. <u>First</u>, the long-arm statute of North Carolina must provide a statutory basis for the assertion of personal jurisdiction. Section 1-75.4 of the North Carolina code provides that personal jurisdiction exists where a party "[i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C.G.S. § 1-75.4(1)(d) (2021).

<u>Second</u>, the exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See, e.g., WLC, LLC v. Watkins*, 454 F. Supp. 2d 426, 431 (M.D.N.C. 2006) ("[T]he exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment to the United States Constitution."). For the State of North Carolina to "exercise personal jurisdiction over a non-resident defendant, due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994)). Moreover, "due process requires a sufficient nexus between defendants' contacts with the forum state and the nature of the claims asserted." *WLC, LLC*, at 432. A plaintiff's claims must specifically "arise out of or relate to the defendant's contacts with the forum state." *Id.* (citation omitted). "In short, jurisdiction is proper when a relationship exists between the defendant and the forum such that he

5

should reasonably anticipate being haled into court there." *Id*. at 431 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Furthermore, "[p]ersonal jurisdiction may be exercised either specifically or generally." *Id*. "Specific jurisdiction is established where the forum state asserts personal jurisdiction over a defendant in a suit arising out of or related to that defendant's contact with the state." *Id*. (citation omitted). On the other hand, "general jurisdiction is established where the defendant's contact with the forum state have been systematic and continuous even though the contacts do not have any relation to the plaintiff's claim." *Id*.

ii.  <u>Plaintiff has not pled and cannot show that LeBlanc – a Massachusetts resident – has systematic and continuous contacts with the State.</u>

Here, Plaintiff does not assert, nor do the alleged facts support a finding, that LeBlanc's contacts with North Carolina are sufficient to subject him to specific jurisdiction nor general jurisdiction. As a primary matter, Plaintiff does not allege that LeBlanc resides in North Carolina, has a business in North Carolina, or has any contractual obligations in the state related to this litigation. Indeed, Plaintiff confirms that LeBlanc is **not** a resident of this State. *See* Complaint ("Compl.") ¶ 10 ("Defendant Ricky A. LeBlanc is a resident of Massachusetts.") Thus, Plaintiff must demonstrate that LeBlanc's actions support Plaintiff haling him into court in this State.

Yet the Complaint does not provide this jurisdictional hook. Plaintiff references the actions of LeBlanc only five times in his Complaint. *See* Compl. ¶¶ 10, 31, 32, 50 and 55. ***None*** of these allegations are sufficient to establish jurisdiction over LeBlanc. For example, Plaintiff alleges LeBlanc "signed" multiple emails sent to Plaintiff. Compl. ¶¶ 10, 55. Plaintiff also alleged he received calls from an individual who Plaintiff "believes was a paralegal in Defendant LeBlanc's office." Compl. ¶ 50. And Plaintiff readily admits that these actions were **not** targeted to the State of North Carolina because Plaintiff is **not** a resident of this State. Rather, he affirmatively pleads

6

that he is "an individual who resides in the Western District of Texas," not North Carolina. Compl. ¶ 4. Thus, even taking Plaintiff's allegations as true, LeBlanc allegedly emailing or calling a resident of Texas is certainly insufficient to establish specific jurisdiction in this State. Moreover, these allegations are wholly insufficient to amount to "systematic and continuous" contact to establish general jurisdiction in North Carolina. Further, Plaintiff's contention that LeBlanc maintains a purported web presence does not equate to personal jurisdiction. *See* Compl. ¶ 31. *See WLC, LLC*, 454 F. Supp. 2d at 437 ("Under circuit court precedent, the nature of the web site does not create a reasonable anticipation of Defendants being haled into court in North Carolina, and this court does not find it particularly relevant in the specific jurisdiction analysis.").

Plaintiff has not provided any basis for this Court to exercise jurisdiction over LeBlanc and, accordingly, the Complaint must be dismissed as to him.

## II.     <u>Plaintiff's Complaint is subject to dismissal under Rule 12(b)(6).</u>

Dismissal of Plaintiff's Complaint, either in its entirety or partially, is required for multiple reasons. First, Plaintiff does not and cannot plausibly allege TCPA violations against the individual defendants. Second, Plaintiff has not plausibly alleged the use of an ATDS to support his claim in Count I. Third, the NCTSA covers calls made to North Carolina residents – and Plaintiff has admitted that he is a resident of Texas – and Plaintiff has not plausibly alleged receipt of a prerecorded message under the statute.

### A.     **Legal standard under Rule 12(b)(6).**

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. In this regard, a legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. Naked allegations without factual enhancements "stop[] short of

the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Syed v. Mohammad,* 2016 WL 8731783, at *1 (E.D. Va. Apr. 1, 2016) ("[L]egal conclusions unsupported by allegations of ***specific facts*** are insufficient to withstand a motion to dismiss under Rule 12(b)(6).") (citing *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994)) (emphasis added); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2-4 (E.D. Va. Apr. 15, 2019) (TCPA complaint dismissed where, as here, the plaintiff did not allege specific facts supporting his bald conclusions that "defendant [wa]s the party that made the [alleged] calls to [his] cellular phone," among other pleading defects).

Moreover, while the Court must generally accept Plaintiff's factual allegations as true when considering a Rule 12(b)(6) motion, conclusory allegations, unwarranted or unreasonable inferences, and legal conclusions do not suffice, need not be taken as true, and will not prevent dismissal. *See, e.g.*, *Sprye v. Ace Motor Acceptance Corp.,* 2017 WL 1684619, at *2 (D. Md. May 3, 2017) (internal citations omitted).

### B. Plaintiff's TCPA claims against the individual defendants are not permitted.

The individual defendants cannot be held individually liable under the TCPA because Plaintiff has already named their corporate entities as defendants and, further, Plaintiff fails to show a direct, personal, or knowing participation in the alleged violations. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.,* 885 F.3d 154 (3d Cir. 2018) (concluding an individual cannot be liable under the TCPA without a showing of direct, personal, or knowing participation in the violation.).

In *City Select*, the plaintiff filed a TCPA claim against David Randall Associates, Inc. and its former president and co-owner, Raymond Miley, III, based on "unsolicited fax transmissions

advertising the services of Defendant David Randall Associates, Inc." *City Select*, 885 F.3d at 155.

The case went to a jury trial and the jury found Miley was not individually liable for the alleged

TCPA violations. Plaintiff appealed the District Court's jury instructions as to personal liability

under the TCPA. *Id*. at 159. Third Circuit reviewed, determining first "that there [was] a real

question as to whether Miley can be held liable under the statute at all." *Id*. at 159. Plaintiff argued

that Miley was liable as the "author or originator of the relevant faxes." *Id.* Importantly, the Third

Circuit was unpersuaded by Plaintiff's arguments, noting "[i]ndividuals ordinarily are shielded

from personal liability when they do business in a corporate form, and it should not lightly be

inferred that Congress intended to disregard this shield." *Id*. (citing *Lamonica v. Safe Hurricane*

*Shutters, Inc.,* 711 F.3d 1299, 1313 (11th Cir. 2013)). Ultimately, the Third Circuit chose not to

rule on this issue because "it was neither litigated in the District Court nor fully briefed and argued

on appeal." *Id*. at 161.

However, the Third Circuit confirmed the trial court's jury instruction regarding individual

liability under the TCPA. *Id.* at 162-63. Plaintiff argued the district court "erred in instructing the

jury that it needed to find that Miley's involvement was significant, that he exercised active

oversight, and that he had knowledge that he was directly participating in or authorizing the fax

advertising." *Id*. 161-62. The Third Circuit was unpersuaded by Plaintiff's arguments, concluding

that the "District Court's instructions did not misstate the applicable law." *Id*. at 162.

Here, Plaintiff has sued multiple corporate defendants and individual defendants. As the

Third Circuit noted in *City Select*, individuals are ordinarily shielded from personal liability when

they do business in a corporate form. *See also Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375,

386 (4th Cir. 2018) ("The corporate form generally insulates shareholders from personal liability

. . .."). Plaintiff has not pled any facts permitting this Court to disregard the corporate formalities

and permit liability against any of the individual defendants. Furthermore, Plaintiff fails to plead that any individual defendant's involvement was significant, that any exercised active oversight, or that any had knowledge of or direct participation in the alleged unsolicited calls to Plaintiff. Accordingly, Plaintiff's Complaint fails to state a claim under the TCPA as to the individual defendants and must be dismissed.

### C. Plaintiff has not plausibly pled that Wallace & Graham, P.A. or Rhine Law Firm, P.C. are vicariously liable for any calls Plaintiff received.

Plaintiff's TCPA claims against Wallace & Graham, P.A. and Rhine Law Firm, P.C. must be dismissed because Plaintiff has affirmatively pled facts demonstrating that the parties were not aware of or responsible for any alleged calls to him. Under the TCPA, "a company can be held liable for calls made on its behalf, even if not placed by the company directly." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659 (4th Cir. 2019) (citing 47 U.S.C. § 227(c)(5)). However, to plead vicarious liability, a plaintiff must do more than simply include multiple corporate defendants in a case caption. If a plaintiff does not include any allegations in his or her pleading suggesting an agency relationship between the parties, evidenced by ratification or an agreement between the defendants, dismissal is required. *See, e.g., Cunningham v. Autoguard Advantage Corp.*, No. 3:23-cv-00238, 2024 WL 818381, at *4 (W.D.N.C. Feb. 27, 2024) (dismissing claim by Plaintiff where he did not plead any allegation that suggested the corporate defendants "were aware of any calls" made to Plaintiff, "and Plaintiff fail[ed] to allege the existence of an agreement [between the parties] or plausibly allege ratification by any other Defendant, which might be suggestive of vicarious liability.").[2]

---

[2] And, as the *Cunningham* court noted, Plaintiff's "history of litigation also demonstrates his familiarity" with the legal issues implicated by his claims, including vicarious liability, which further counseled in favor of dismissal.

Here, Plaintiff has not alleged any facts suggesting, let alone plausibly pleading, an agency relationship between Wallace & Graham, Rhine Law Firm, or Sokolove Law. He has not pled that any party had control over another, that any party acted as principal or agent, or any manifestation of assent to an agency relationship. *See Krakauer*, 925 F.3d at 660. Nor has Plaintiff pled any facts suggesting that the parties had an agreement between them that would support vicarious liability. Finally, Plaintiff has not pled any facts demonstratnig that Wallace & Graham or Rhine Law Firm was involved in or even aware of the calls Plaintiff contends he received from Sokolove Law.

Moreover, the affirmative facts pled by Plaintiff demonstrate that he cannot state a claim against Wallace & Graham or Rhine Law Firm for any purported TCPA violation. Specifically, Plaintiff pled in the Complaint that a Sokolove representative "wanted the Plaintiff's permission to share information with Wallace & Graham." (ECF No. 1 at ¶ 50.) By affirmatively pleading that Sokolove Law requested Plaintiff's consent to share his information with another party, Plaintiff has confirmed that he cannot plead a claim for vicarious liability. Sokolove Law would have had no need to request Plaintiff's consent if the corporate defendants were already working together, with knowledge of the calls or ratification of the allegedly illegal conduct. Simply put, Plaintiff has not even stated each element of a TCPA claim to support vicarious liability, let alone plausibly pled any claim for relief as to Wallace & Graham or Rhine Law Firm. Accordingly, Plaintiff's TCPA claims against these two corporate defendants must also be dismissed.

11

**D.      Plaintiff has not plausibly pled that any corporate defendant used an ATDS to contact him.**

Count I of Plaintiff's Complaint is subject to dismissal for the independent reason that Plaintiff has not plausibly pled that any Defendant used an ATDS to contact him after the purported October 2, 2023 call at 11:12 a.m.[3]

      i.      The Supreme Court's decision in *Facebook* makes clear that an ATDS requires random or sequential number generation.

On April 1, 2021, the United States Supreme Court issued its decision in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) ("*Facebook*"), to address the definition of an automatic telephone dialing system ("ATDS") under the TCPA. The TCPA defines an ATDS as "equipment which has the capacity—to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). The definition had been the subject of much litigation in the five years before the *Facebook* decision, and the subject of a circuit split. *See, e.g., Duguid v. Facebook*, 926 F.3d 1146, 1151 (9th Cir. 2019) (holding that an ATDS need not use a random or sequential generator, only having the capacity to "store numbers to be called" and "to dial such numbers automatically"); *Gadelhak v AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020) (holding that a telephone system must store or produce numbers using a random or sequential number generator to constitute an ATDS).

A unanimous Court returned the definition to the language of the statute, holding that in order to qualify as an ATDS, "the equipment in question ***must use*** a random or sequential number generator." *Facebook*, 141 S.Ct. at 1170 (emphasis added). The ATDS definition "excludes equipment that does not use a random or sequential number generator." *Id.* at 1171 (citing 47

---

[3] Plaintiff contends that he received multiple calls on October 2, 2023. (Compl. ¶¶ 36-53.) Every call after the alleged call at 11:12 a.m., as pled in Paragraph 36 of the Complaint, is subject to dismissal as described herein because Plaintiff has not plausibly alleged use of an ATDS.

12

U.S.C. § 227(a)(1)(A)).  In sum, to qualify as an ATDS, a system must use a random or sequential number generator to create and dial a telephone number.

The *Facebook* decision reflects the aims of the statute.  The phrase "random and sequential number generator" indicates the haphazard contact that the statute was intended to target:  that a caller is casting as wide a net as possible to contact as many people as he or she can, regardless of who those people are or whether they have any connection to the caller.  *See., e.g.,* H.R. Rep. 102-317, at 9–10 (1991) (taking issue with indiscriminate calling practices in which "[t]elemarketers often program their systems to dial sequential blocks of telephone numbers, which have included . . . unlisted telephone numbers.").  For example, telemarketers would contact telephone numbers through random generation (e.g., 593-872-0146, 104-697-3582, 289-756-0134) or sequential generation (e.g., 111-111-111, 111-111-1112, 111-111-1113).   This type of contact is indiscriminate.  Calls that specifically target someone – made to a specific telephone number intending to reach a specific person – are, by their very essence, neither haphazard nor random.  They are directed and designed to contact the person called.

ii.  <u>Courts throughout the nation are granting motions to dismiss where a plaintiff does not allege that a defendant used a random or sequential number generator to *create* the plaintiff's telephone number</u>.

With the Supreme Court's guidance on the definition of an ATDS, district courts are increasingly granting motions to dismiss TCPA claims where a plaintiff has not alleged that his or her telephone number was created through the use of a random or sequential number generator.  *See, e.g., Borden v. eFinancial, LLC*, 53 F.4th 1230, 1233 (9th Cir. 2022) (affirming district court's dismissal of TCPA claim because "[t]he TCPA requires that an autodialer randomly or sequentially generate *telephone* numbers, not just any numbers") (emphasis in original); *Austria v. Alorica, Inc.*, No. 2:20-cv-05019, at *6 (C.D. Cal. Dec. 16, 2021) (dismissing TCPA claim where the

13

plaintiff did not allege that defendant generated his telephone number by use of a random or sequential number generator); *Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*, No. 3:19-cv-592, at \*3 (D. Conn. July 18, 2022) (granting motion to dismiss on ATDS claims where the plaintiff alleged that defendant's system generated random or sequential index numbers used to select which telephone numbers to call from a stored list); *Samataro v. Keller Williams Realty, Inc.*, Nos. 1:18-cv-775, 1:20-cv-835, 1:21-cv-76, 2021 WL 4927422, at \*4 (W.D. Tex. Sept. 27, 2021) (dismissing TCPA claim with prejudice because plaintiffs did not allege that their telephone numbers were created by a random or sequential number generator); *Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 WL 2529613, at \*3 (N.D. Ill. June 21, 2021) (granting motion to dismiss TCPA claim because plaintiff alleged that the defendant's system called telephone numbers stored in its system, but did not allege that the system used a random or sequential number generator to create telephone numbers to be dialed); *Barry v. Ally Fin., Inc.*, No. 20-cv-12378, 2021 WL 2936636, at \*5 (E.D. Mich. July 13, 2021) (dismissing TCPA claim when "there [was] no allegation in the Complaint even hinting that Defendant used its dialing system to make calls to plaintiff . . . using a random or sequential number generator, or even that the Defendant's dialing system had the capacity to do so (such as allegations that Defendant's dialing system could be used to call persons at random, with no direct connection to Defendant's business)"); *see also Mosley v. Gen. Revenue Corp.*, No. 1:20-cv-01012-JES-JEH, 2020 WL 4060767, at \*4 (C.D. Ill. 2020) (rejecting plausibility simply because a plaintiff alleges the dialer system has the capacity to randomly or sequentially generate numbers, without any factual basis for such allegations); *Cross v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-cv-01047, 2022 WL 193016 (W.D. Ark. Jan. 20, 2022) (granting motion to dismiss where the plaintiff alleged that the defendant used a system that randomly selected his telephone number, but did not randomly *generate* his telephone number).

14

iii.   <u>Plaintiff has not and cannot allege that Defendants used an ATDS to contact him beyond the first call made to him</u>.

Even taking Plaintiff's allegations as true, he has not plausibly pled that any Defendant used an ATDS to contact him after the first call he contends he received on October 2, 2023.[4]  As described above, an ATDS is a system that indiscriminately contacts consumers.  Even presuming that the first call reached Plaintiff through simple luck – and discovery will reveal that Plaintiff invited this call – the facts that Plaintiff affirmatively pled conclusively shows that none of the subsequent calls used an ATDS.  Plaintiff contends that he received numerous calls after the first October 2, 2023 call, including calls "like clockwork."  (Compl. ¶ 49.)  He contends that all of these calls were *intended for him* – where the callers purportedly used information that Plaintiff provided on other, earlier calls, and purportedly "verify[ing] the exact same information" discussed in prior calls.  (*Id.* at ¶¶ 46-47.)

Yet Plaintiff's own allegations doom his claim.  If the calls he received truly were the scattershot missives of an ATDS, then Defendants could not contact him "like clockwork," with each call just another shot in the dark to try to randomly create Plaintiff's phone number once more.  Instead, Plaintiff affirmatively pleads that Defendants wanted to reach him at his telephone number – intentionally calling him and intentionally trying to talk to him.  This is not the work of a random or sequential number generator.  Thus, Plaintiff's own alleged facts demonstrate that none of the subsequent calls were initiated with an ATDS and Count I of Plaintiff's Complaint must be dismissed with respect to every call after the first October 2 call.[5]

---

[4] Should this matter proceed beyond the pleadings, discovery will reveal that none of the calls at issue in this litigation were initiated by an ATDS.

[5] Even if Plaintiff could plausibly allege an ATDS, and it is clear he cannot, Plaintiff's allegations with regard to every call following the October 2 call at 11:12 a.m. do not meet the pleading requirements of *Iqbal/Twombly*, where Plaintiff does not offer any facts whatsoever to support his allegations that he purportedly "received twenty-four additional incoming calls from

15

**E.** **Dismissal of Count III of the Complaint is required as to all Defendants because Plaintiff has not pled a plausible violation of the NCTSA.**

Plaintiff's NCTSA claim alleged in Count III of the Complaint should be dismissed under Rule 12(b)(6) for two reasons. First, the NCTSA applies to calls made to North Carolina residents. Plaintiff has affirmatively plead that he is a resident of Texas, meaning his claim necessarily fails.

i. <u>Plaintiff has not and cannot plead the elements of an NCTSA claim</u>.

Plaintiff fails to plead facts supporting essential elements of a NCTSA claim in three ways: (1) Plaintiff fails to plausibly plead he is a North Carolina resident; (2) Plaintiff fails to plead the calls were prerecorded and meet the definition under the NCTSA; and (3) Plaintiff fails to allege sufficient facts to establish authority and control as required under the NCTSA.

Plaintiff has affirmatively pled that he is a resident of Texas and, thus, outside the scope of the NCTSA. The statute regulates "unsolicited telephone call[s]" made by "telephone solicitor[s]" who are "doing business in this State." *See* N.C. Stat. §§ 75-104(4), (10), (12). The statute unambiguously defines "[d]oing business in this State" as making telephone solicitations "to ***North Carolina telephone subscribers***, whether the telephone solicitations are made from a location inside North Carolina or outside North Carolina." *Id.* at § 75-104(4) (emphasis added). As noted above, however, Plaintiff's own pleading makes clear he resides in Texas, he does not allege he was in North Carolina at the time of the call, and he pleads that he has a telephone number with a Texas area code. Compl. ¶ 4; *see generally* Compl. Plaintiff is not entitled to the protections the NCTSA

---

October 3, 2023 to November 28, 2023," (Compl. ¶ 54), as Plaintiff does not even plead the date on which he received the purported calls. Count I is subject to dismissal for the independent reason that all allegations of calls following the first October 2 call lack the specificity necessary for pleading in federal court.

16

affords to North Carolina residents because he has affirmatively pled that he is a Texas resident and is not a North Carolina telephone subscriber.

Second, Plaintiff has not plausibly pled that he received prerecorded calls as defined by the statute. A "recorded message player" is defined in the NCTSA as "[a]ny automatic equipment that incorporates a storage capability of telephone numbers to be called or a random or a sequential number generator capable of producing numbers to be called that, working alone or in conjunction with other equipment, disseminates a prerecorded message to the telephone number called." N.C. Stat. § 75-100(2). In other words, the "player" **_must do much more_** than simply transmit a "prerecorded" message to violate the NCTSA and must function akin to an automatic telephone dialing system under the TCPA. *See* 47 U.S.C. § 227(a)(1). Yet, in this regard, Plaintiff not only fails to allege facts suggesting the voice he heard was "prerecorded" as discussed above, but he also pleads no facts that the "player" used by the caller fits the NCTSA definition (*e.g.*, it stores or generates numbers to be called). Instead, as described above, Plaintiff affirmatively pleads facts demonstrating that calls to him were *not* random.

Third and finally, the NCTSA contemplates vicarious liability for unsolicited calls made "on behalf" of defendants, N.C. Stat. § 75-105(b), and North Carolina agency law is in accord with federal law—*i.e.*, Plaintiff must allege facts suggesting "authority" and "control." *Powers v. One Techs., LLC*, 2021 WL 3519282, at *4–5 (W.D.N.C. Aug. 10, 2021) ("In North Carolina, in order to have an agency relationship, an agent must be (1) under the authority of the principal to act on their behalf, and (2) under the control of the principal.") (citing *State v. Weaver*, 607 S.E.2d 599, 606 (N.C. 2005)). But again, Plaintiff alleges no such facts.

Indeed, Plaintiff's purported support for his allegations do not plausibly suggest evidence of vicarious liability. He attempts to plead "authority" and "control" by contending that one of the

17

Defendants stopped calls that he received. *See* Compl. ¶ 68 ("*Demonstrating control over the callers*, Defendant Rhine went on say, 'I received a phone call too, and I stayed on it… And as soon as I identify myself to them, they stopped it.") (emphasis added). However, this fatal attempt does not meet the required standard to establish authority or control. Rather, Plaintiff quotes an alleged statement Defendant Rhine made regarding unsolicited calls he was also receiving and how Defendant Rhine stopped those calls. These allegations – wholly unrelated to the calls Plaintiff contends he received – do not establish control or authority over the alleged unsolicited calls Plaintiff alleges in the Complaint. Plaintiff fails to plead any additional facts to establish authority and control as required by the NCTSA. Plaintiff's NCTSA claim is insufficiently pled and Plaintiff has conceded that he is not a North Carolina resident. Thus, dismissal of Count III of Plaintiff's Complaint with prejudice is required.

          ii.      <u>Plaintiff is not entitled to double recovery</u>.

Count III must be dismissed for the independent reason that he is not entitled to a double recovery for the same purported damages. It is axiomatic that a plaintiff generally may not receive a "double recovery under different legal theories for the same injury." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.,* 637 F.3d 454, 460 (4th Cir. 2011). *See also Medina v. District of Columbia*, 643 F.3d 323, 328 (D.C. Cir. 2011) ("[I]f a federal claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery."). In this regard, while the NCTSA has various other provisions that the Telephone Consumer Protection Act ("TCPA") does not (and that Plaintiff has not alleged here), Plaintiff only seeks relief in Count III under the NCTSA's analogue provision designed to prevent unsolicited calls using a "recorded message player"—*i.e.,* a "prerecorded voice" similar to Section 227(b) of TCPA (although the NTCSA definition is less favorable to Plaintiff, as noted above). Further, also like the

TCPA, the NCTSA also provides for statutory minimum damages of $500 per call for an initial violation. *See* N.C. Stat. § 75-105(b)(2).

Thus, that Plaintiff plainly seeks the same damages under the NCTSA for the same alleged calls and injury as his TCPA claim further supports dismissal of Count III under Rule 12(b)(6), as there would be double recovery if he is allowed to proceed on both of his claims. *See, e.g., Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.,* 2019 WL 1412943, at *4 (W.D. La. Mar. 28, 2019) ("A claim can be dismissed as duplicative under Rule 12(b)(6) when it seeks identical damages as another claim asserted in the complaint.") (citations omitted); *Masters v. Wells Fargo Bank S. Cent.,* 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013) (dismissing state claim where it would amount to a double recovery with TCPA claim).[6] Therefore, Count III of the Complaint should be dismissed as Plaintiff insufficiently pleads an NCTSA claim and seeks double recovery for the same alleged injury.

## CONCLUSION

WHEREFORE, Defendants Wallace & Graham, P.A., Mona Lisa Wallace, Bill Graham, Whitney Wallace Williams, Mark P. Doby, and Rhine Law Firm, P.C., by counsel, respectfully request that the Court dismiss, with prejudice, Plaintiff's Complaint in its entirety. Defendant Ricky A. LeBlanc, by counsel and by special appearance, requests that this Court dismiss Plaintiff's Complaint, with prejudice, for insufficient service of process, lack of personal jurisdiction, and failure to state a claim. Finally, Defendant Sokolove Law, LLC respectfully requests that the Court dismiss Count I with the exception of the October 2, 2023 call, and dismiss Count III of Plaintiff's Complaint with prejudice.

---

[6] Plaintiff may argue the NCTSA provides for attorneys' fees, whereas the TCPA does not. This argument would be unavailing. As one court aptly noted, "[s]uch expenses are generally not considered 'damages' because they are not the legitimate consequence of the tort . . . sued upon." *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.,* 739 F.2d 1472, 1480 (10th Cir. 1984) (citing 22 Am. Jur. 2d Damages § 165).

19

DATED: May 29, 2024

**WALLACE & GRAHAM, P.C,**
**MONA LISA WALLACE, BILL GRAHAM,**
**WHITNEY WALLACE WILLIAMS,**
**MARK P. DOBY, RHINE LAW FIRM, P.C.,**
**JOEL R. RHINE, SOKOLOVE LAW, LLC,**
**AND RICKY A. LEBLANC**


By: */s/ Virginia Bell Flynn*
Virginia Bell Flynn (N.C. State Bar No. 59109)
TROUTMAN PEPPER HAMILTON SANDERS LLP
301 South College Street, Suite 3400
Charlotte, North Carolina 28202
Telephone: 704-916-1509
Facsimile: 704-998-4051
Email: virginia.flynn@troutman.com


*Counsel for Defendants*

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief complies with the word count limitations set forth pursuant to M.D.N.C. Rule 7.3(d)(1). The word count does not exceed 6,250 words, including the body of the brief, headings, and footnotes.

DATED: May 29, 2024                    By: */s/ Virginia Bell Flynn*
                                       Virginia Bell Flynn (N.C. State Bar No. 59109)

170940345