**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**SALISBURY DIVISION**

| | |
|---|---|
| **CRAIG CUNNINGHAM,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**WALLACE & GRAHAM, P.C, MONA LISA WALLACE, BILL GRAHAM, WHITNEY WALLACE WILLIAMS, MARK P. DOBY, RHINE LAW FIRM, P.C., JOEL R. RHINE, SOKOLOVE LAW, LLC, AND RICKY A. LEBLANC,**<br><br>*Defendants*. | **Case No. 1:24-CV-00221** |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Wallace & Graham, P.C., Mona Lisa Wallace, Bill Graham, Whitney Wallace Williams, Mark P. Doby, Rhine Law Firm, P.C., and Joel R. Rhine, with the special appearance of Defendant Ricky A. LeBlanc, respectfully file this Reply in support of their Motion to Dismiss Plaintiff Craig Cunningham's ("Plaintiff") Complaint in its entirety and state as follows:

**INTRODUCTION**

Plaintiff's Opposition (the "Opposition") to Defendants' Motion to Dismiss (the "Motion") is more notable for what it does not say than for what it does. The Opposition dances around the fact that Plaintiff is a Texas resident, with a Texas telephone number, who represented himself as "Craig Smith" on calls. The Opposition ignores Defendants' caselaw and attempts to survive dismissal by throwing unpersuasive documents – which were not attached to his Complaint – on

the Court's docket. For all of the Opposition's sophistry, it does not outline any reason why the Court should save Plaintiff's Complaint from dismissal.

**First**, Plaintiff has no evidence that he served Defendant LeBlanc or that LeBlanc is subject to personal jurisdiction in North Carolina. If Plaintiff had served LeBlanc, he could easily provide evidence. Yet he has not. Further, Plaintiff concedes that LeBlanc is a Massachusetts resident with no connection to North Carolina and, thus, has not identified any basis for personal jurisdiction.

**Second**, Plaintiff ***is not*** a North Carolina consumer subject to the North Carolina Telephone Solicitation Act, N.C. Gen. Stat. Ann. §§ 75-100, *et seq.* ("NCTSA"). The statute unquestionably covers only North Carolina consumers – and Plaintiff, a professional litigant from Texas, has no reasonable argument that he is covered by the statute.

**Third**, Plaintiff's Opposition does not explain why the Court should ignore the corporate formalities and permit Plaintiff to proceed against the individual defendants. He has not pled that any individual had direct knowledge of or active participation in the alleged calls. Further, he has not tied Defendants Wallace & Graham, P.C. or Rhine Law Firm to the conduct at issue – and his own Complaint demonstrates that these defendants *did not* have knowledge or control over the calls alleged.

**Fourth**, Plaintiff's Telephone Consumer Protection Act ("TCPA") claim requires plausible allegations that Defendants used an "automatic telephone dialing system," or "ATDS," recently defined by the Supreme Court as equipment that uses a random or sequential number generator. The Court will search in vain for any discussion of this case in Plaintiff's Opposition, as Plaintiff appears to argue that Defendants' ability to contact him was only through sheer luck.

The Court is not required to check its common sense at the door when it rules on a motion to dismiss. And common sense dictates that Plaintiff's claims are implausible, requiring dismissal.

## ARGUMENT

### I. Plaintiff has not offered any evidence that he served Defendant LeBlanc or that Defendant LeBlanc is subject to personal jurisdiction in North Carolina.

Plaintiff's Opposition establishes that the Court must dismiss the Complaint as to Defendant LeBlanc. First, Plaintiff has not offered any evidence that he served Defendant LeBlanc. Though Plaintiff claims that LeBlanc's prior counsel agreed to waive service, Plaintiff's own exhibits demonstrate that this is wholly inaccurate. LeBlanc's previous counsel wrote: ***I am not authorized to accept service yet.*** ECF No. 12-2 (emphasis added). Nor does a request to counsel to accept service absolve Plaintiff of his responsibility to properly serve a party under Rule 4. *Brown v. Blue Cross & Blue Shield of N.C.,* 226 F.R.D. 526, 528 n.4 (M.D.N.C. 2004) (citing *U.S. v. Ziegler Bolt & Parts Co.,* 111 F.3d 878, 881 (Fed. Cir. 1997) ("The mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service.")). Indeed, if Plaintiff served LeBlanc, the evidence would be clear: a return of service. Yet Plaintiff has not provided any such evidence.

Moreover, Plaintiff's request for additional time – made improperly in an Opposition brief – is an admission that he has not served LeBlanc. The Court can only extend time upon a showing of excusable neglect. *Cromartie v. N.C. Dep't of Pub. Safety,* No. 3:20-CV-00432-MR, 2021 WL 5237268 at *1 (W.D.N.C. Oct. 26, 2021). Plaintiff has not made any such showing here, where he concedes he attempted to serve LeBlanc, but was never successful. The sanction for his failure is clear: dismissal of Defendant LeBlanc.

Second, even if Plaintiff successfully served LeBlanc, dismissal would still be necessary because Plaintiff has not identified any reason why the Court can assert personal jurisdiction over

LeBlanc. As a primary matter, Plaintiff concedes that the Court cannot exercise general jurisdiction over LeBlanc. (ECF No. 12 at 3.) Yet Plaintiff has likewise failed to provide any evidence showing the existence of specific jurisdiction over LeBlanc, a Massachusetts resident. Plaintiff appears to rely on Sections 3 and 4 of North Carolina's long-arm statute, yet these provisions solely confer jurisdiction where act or omission was local to the *State of North Carolina*. *See* N.C. Gen. Stat. Ann. § 1-75.4(3), (4).[1] LeBlanc is a Massachusetts resident. Plaintiff, meanwhile, is a Texas resident with a Texas telephone number. There are ***no*** allegations in the Complaint that tie LeBlanc to North Carolina or any injury that allegedly occurred or any injury that was allegedly felt in North Carolina. Not only has Plaintiff failed to serve LeBlanc, he cannot show that the Court can exercise personal jurisdiction over LeBlanc.

## II. The NCTSA protects North Carolina consumers, not professional plaintiffs who reside in Texas.

As explained in Defendants' Motion, the NCTSA protects North Carolinians. Plaintiff's Opposition does not offer the Court any reason to rewrite the statute to offer protection for consumers nationwide. Plaintiff's Opposition dances around the heart of the matter – Plaintiff lives in Texas. He is ***not a North Carolina resident*** and thus not entitled to the protections and relief afforded by the NCTSA. In creating the NCTSA, the North Carolina General Assembly found that "*North Carolina residents* should have the freedom to choose whether or not to permit telephone solicitors to contact them" and "[t]he public interest requires … additional protection for *North Carolina residents* who enter into consumer transactions initiated through telephone solicitations." N.C. Gen. Stat. Ann. § 75-100(4) and (9) (emphasis added).

[1] Plaintiff also appears to rely on Section 2 of the North Carolina long-arm statute. This provision confers jurisdiction "[i]n any action which may be brought under statutes of this State that specifically confer grounds for personal jurisdiction." Plaintiff has not identified any such statute.

Further, Plaintiff's reliance on the definition of "telephone subscriber" ignores the fact that the definition of "telephone solicitor" requires a connection to the State of North Carolina. Though the definition of "telephone subscriber" may not include language requiring the consumer to reside in North Carolina or have a North Carolina telephone number, the statute creates *restrictions on telephone solicitations*. *See* N.C. Gen. Stat. Ann. § 75-102 (entitled "Restrictions on telephone solicitations"). The statute regulates telephone solicitors who "do[ ] business in this State . . . ." N.C. Gen. Stat. Ann. § 75-101(10). And the statute defines doing business in the State as "[t]o make or cause to be made any telephone solicitation ***to North Carolina telephone subscribers*** . . . ." N.C. Gen. Stat. Ann. § 75-101(4) (emphasis added).

Though "telephone subscriber" may not require a specific connection to North Carolina, the definition of "telephone solicitor" unquestionably does. Yet Plaintiff is a Texas resident, with a Texas telephone number. He cannot invoke the protections of this State or ask this Court to rewrite the statute in his favor.

Finally, Plaintiff's remaining arguments do not offer the Court any reason to ignore the plain language of the statute. Even if Plaintiff was entitled to the protections of the NCTSA, he has not plausibly pled violations in compliance with *Iqbal/Twombly* standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Nor do Plaintiff's caselaw citations show that he is entitled to a double recovery where his NCTSA claim is based on the same factual allegations as his TCPA claim. *See Mey v. Phillips*, 71 F.4th 203, 208 (4th Cir. 2023) (finding the plaintiff was not seeking double recovery because "the statutory penalties at issue … penalize different conduct"); *Guadian v. Progressive Debt Relief, LLC*, No. 23-cv-00235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023)

(declining to make a recommendation on double recovery); *N.Y. v. Ametek, Inc.*, 473 F. Supp. 2d 432, 433 (S.D.N.Y. 2007) (finding double recovery was not an issue based upon the facts pled). Plaintiff readily admits that he is not a North Carolina resident and does not have a North Carolina number. The NCTSA does not afford him any relief and dismissal is required.

## III. Plaintiff has not identified any reason this Court should ignore the corporate formalities and permit Plaintiff to pursue the individual defendants personally or that Wallace & Graham or Rine Law Firm are vicariously liable.

### A. Plaintiff has not alleged direct, personal, or knowing participation by the individual defendants.

Plaintiff's Opposition does not direct the Court to ***any*** facts that would permit it to disregard the corporate formalities and impose liability against any of the individual defendants because Plaintiff has not shown any direct, personal, or knowing participation in the purported TCPA violations. As described in *City Select Auto Sales Inc. v. David Randall Assocs., Inc.,* 885 F.3d 154 (3d Cir. 2018), the corporate formalities shield individuals absent facts showing significant involvement, "active oversight," or direct knowledge or participation in the purported violations. 885 F.3d at 161-62. Plaintiff has not and cannot point the Court to any allegations in the Complaint that would come close to this standard, especially where Plaintiff alleged that Defendant Mona Wallace "***denied knowing anything about or having any records for***" the purported telephone calls. (ECF No. 1 at ¶ 61 (emphasis added).)

Further, the caselaw upon which Plaintiff relies is inapposite. First, Plaintiff relies on cases that address personal jurisdiction, not liability on individual defendants. *See Williams v. Schanck*, No. 5:15-cv-01434, 2019 WL 4246570, at *1 (N.D. Ala. Sept. 6, 2019) (analyzing exercise of personal jurisdiction over individual defendant); *Montelongo v. My Fin. Solutions, LLC*, No. 19-cv-00577, 2020 WL 210814, at *1 (W.D. Tex. Jan. 14, 2020) (analyzing whether district court could exercise personal jurisdiction over individual defendants).

Second, Plaintiff has not alleged an agency relationship between the individual defendants. Plaintiff relies on *Suprlark v. Dimension Service Corporation*, No. 2:21-cv-3803, 2022 WL 2528098, at *1 (S.D. Ohio July 7, 2022), yet the out-of-Circuit district court found that the plaintiff there pled "a classical agency relationship" between the defendants. Yet Plaintiff has not pled any such relationship here. And Plaintiff's attempt to foist a purported "fee arrangement agreement" before the Court – despite the fact that he did not attach this document to his Complaint – does not establish an agency relationship.[2] Indeed, Plaintiff offers no explanation to support a nexus between purported telephone calls and the "fee arrangement agreement."

Finally, the remainder of Plaintiff's caselaw citations support Defendants' arguments, not his own. In *Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011), the district court found that individuals who had a "direct, personal participation in or personally authorized the conduct" could be found liable. The defendants in *Universal Elections* admitted "they hired Robodial, recorded the message, uploaded the message and list of phone numbers to Robodial's website, and instructed that Robodial broadcast the message on Election Day." *Id*. at 413. Similarly, the district court in *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001), emphasized the need for direct, personal participation, when it concluded that the individual defendants had "direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violated the TCPA."

---

[2] This document is not properly before the Court. "When a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the documents attached or incorporated into the complaint." *Lindsay v. Nichino Am., Inc.*, 202 F. Supp. 3d 524, 529 (M.D.N.C. 2016) (internal citations omitted). "Documents other than the pleadings are properly considered if they are either attached to the complaint, or attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Lindsay*, 202 F. Supp. at 529.

There is no such direct, personal participation alleged here. As described above, Plaintiff has not pled any facts showing the "direct, personal participation" required for the Court to ignore the corporate formalities. Further, Plaintiff's own allegations show that multiple individual defendants *denied* having this type of personal knowledge or involvement. The Court cannot ignore Plaintiff's own admissions in the Complaint showing that Plaintiff cannot assert liability against the individual defendants.

**B. Plaintiff's Opposition fails to establish any argument for vicarious liability against Wallace & Graham, P.A. or Rhine Law Firm.**

Plaintiff's purported "smoking gun evidence" – the "fee arrangement agreement" that is unsigned and not properly before the Court – is not persuasive, let alone dispositive. Even if the Court were to consider this document, Plaintiff still cannot escape the affirmative allegations of his own pleading. Specifically, Plaintiff affirmatively pled that the principals of Wallace & Graham and Rhine Law Firm ***did not know*** about any alleged telephone calls Plaintiff received. (ECF No. 1 at ¶¶ 60-62, 68-69.) Plaintiff also alleged that the Sokolove Law representative with whom he spoke at 2pm on October 2 asked Plaintiff if he could provide his information to Wallace & Graham. (*Id.* at ¶ 50.) Plaintiff cannot argue that these corporate defendants are allegedly liable when he himself pled facts establishing that they did not know about the alleged telephone calls and that Sokolove Law needed his permission to share information with the corporate defendants.

Further, Plaintiff's reliance on an out-of-district decision from one of the many TCPA cases he has filed does not provide any reason to ignore Plaintiff's own allegations. In *Cunningham v. Watts Gueera, LLP*, Plaintiff filed another case alleging he received telephone calls related to Camp Lejeune litigation. The magistrate judge recommended that the district court deny the defendant's motion to dismiss because Plaintiff alleged that he received calls from callers who "refused to identify themselves or the law firms on whose behalf or for whose benefit they were

calling unless Plaintiff agreed to file such a claim . . . ." No. 22-cv-363, 2024 WL 3100773, at *13 (W.D. Tex. May 23, 2024).[3] Even taking Plaintiff's allegations as true here, he has affirmatively pled that all of the representatives with whom he spoke identified themselves and noted their association with Sokolove Law – not Wallace & Graham or Rhine Law Firm. Plaintiff has not and cannot state a viable claim for vicarious liability against these entities and dismissal is required.

## IV. Plaintiff's Opposition confirms that he cannot allege that the corporate defendants contacted him with a system that randomly or sequentially generated his telephone number *each time* he allegedly received a call.

As described in Defendants' Motion, Plaintiff has not plausibly pled that any Defendant used an ATDS – a system required by the TCPA – to contact him after the purported October 2, 2023 call at 11:12 a.m. Plaintiff's Opposition ignores Defendants' arguments and, instead, relies on outdated caselaw superseded by the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). The Supreme Court held in *Facebook* that the equipment used to place a telephone call "***must use*** a random or sequential number generator" to qualify as an ATDS. *Id.* at 404 (emphasis added). Yet the Court will look in vain for any discussion of *Facebook*, the pivotal and binding decision that defines an ATDS, in Plaintiff's Opposition. Instead, Plaintiff relies on decisions that predate *Facebook* in an attempt to save his fatally flawed claim. These decisions have been overruled by *Facebook* and any reliance on them is an invitation for error.

Further, Plaintiff's contention that the *Facebook* decision "require[s] the Court to make impermissible technical assumptions at the pleading stage," ECF No. 12 at 13, is patently false. As described in *Facebook*, an ATDS *uses* a random or sequential number generator. Plaintiff's argument appears to be that, when Sokolove Law allegedly contacted him, it did so only through

[3] This report and recommendation was *not* a holding and does not hold that "evidence of a retainer agreement received as a result of a telemarketing call was sufficient to impose direct liability on all the law firms named in the agreement." (ECF No. 12 at 11.)

sheer luck – that it used a random or sequential number generator to call him after the first call and, through pure happenstance, Plaintiff's phone number was dialed. There are an estimated 458 million active phone numbers in the United States[4] and, even if Sokolove Law were truly dialing random numbers, there are 6.4 billion potential number combinations.[5] Consequently, what Plaintiff has alleged is tantamount to hitting the lottery ***five times in the span of two hours***. (ECF No. 1 at ¶¶ 46-50.) This is wholly implausible. An ATDS, as defined by *Facebook*, targets random and indiscriminate contact. What Plaintiff has alleged in the Complaint is neither random or indiscriminate – the calls he alleges were intended for him, confirming that Defendants did not use an ATDS.

Finally, Plaintiff's argument that this reading of the statute "renders the term 'store' in 'store or produce' superfluous and without meaning" is one that the Supreme Court considered ***and rejected*** in *Facebook*. *Id.* at 407 n.7 (rejecting argument that the Court's reading of ATDS definition renders "produce" or "store" superfluous); *see also Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022) (finding that the requirement for an ATDS to use a random or sequential number generator does not render "store" and "produce" superfluous). Accordingly, Count I of Plaintiff's Complaint must be dismissed for all calls after the alleged October 2, 2023 call.

## CONCLUSION

WHEREFORE, Defendants Wallace & Graham, P.A., Mona Lisa Wallace, Bill Graham, Whitney Wallace Williams, Mark P. Doby, and Rhine Law Firm, P.C., respectfully request that

---

[4] *See* "How Many Phone Numbers Are There? (2023 Statistics)," available at www.sellcell.com/blog/how-many-phone-numbers-are-there-2023-statistics/ (last visited July 19, 2024).

[5] *See* "Math Counts: Phone Number Frenzy," available at www.mathcounts.org/resources/phone-number-frenzy-1#:~:text-That's%20a%20total%20of%208,combinations%20for%20that%20as%20well (last visited July 19, 2024).

the Court dismiss, with prejudice, Plaintiff's Complaint in its entirety. Defendant Ricky A. LeBlanc, by special appearance, requests that this Court dismiss Plaintiff's Complaint, with prejudice, for insufficient service of process, lack of personal jurisdiction, and failure to state a claim. Defendant Sokolove Law, LLC respectfully requests that the Court dismiss Count I with the exception of the October 2, 2023 call, and dismiss Count III of Plaintiff's Complaint with prejudice.

DATED: July 19, 2024

**WALLACE & GRAHAM, P.C,**
**MONA LISA WALLACE, BILL GRAHAM,**
**WHITNEY WALLACE WILLIAMS,**
**MARK P. DOBY, RHINE LAW FIRM, P.C.,**
**JOEL R. RHINE, SOKOLOVE LAW, LLC,**
**AND RICKY A. LEBLANC**

By: */s/ Virginia Bell Flynn*
Virginia Bell Flynn (N.C. State Bar No. 59109)
TROUTMAN PEPPER HAMILTON SANDERS LLP
301 South College Street, Suite 3400
Charlotte, North Carolina 28202
Telephone: 704-916-1509
Facsimile: 704-998-4051
Email: virginia.flynn@troutman.com

*Counsel for Defendants*

**CERTIFICATE OF WORD COUNT**

I hereby certify that this brief complies with the word count limitations set forth pursuant to M.D.N.C. Rule 7.3(d)(1). The word count does not exceed 3,125 words, including the body of the brief, headings, and footnotes.

DATED: July 19, 2024

By: *__/s/ Virginia Bell Flynn__*
Virginia Bell Flynn (N.C. State Bar No. 59109)