IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRAIG CUNNINGHAM,               )
                               )
            Plaintiff,         )
                               )
        v.                     )        1:24-cv-00221
                               )
WALLACE & GRAHAM, P.A., et     )
al.,                           )
                               )
            Defendants.        )

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is a motion to dismiss filed by Defendants Wallace & Graham, P.C. ("Wallace & Graham"), Rhine Law Firm, P.C. ("Rhine Law Firm"), Sokolove Law, LLC ("Sokolove"), and six individual defendants: Mona Lisa Wallace, Bill Graham, Whitney Wallace Williams, Mark P. Doby, Joel R. Rhine, and Ricky A. LeBlanc (collectively, the "Individual Defendants"). (Doc. 7.) Plaintiff Craig Cunningham has responded in opposition (Doc. 12), and Defendants have filed a reply. (Doc. 13.) For the reasons that follow, Cunningham's claims against LeBlanc will be dismissed, but Defendants' motion will otherwise be denied.

## I.   BACKGROUND

The complaint, the well-pleaded allegations of which the court accepts as true for purposes of the motion to dismiss, alleges the following:

Cunningham is a United States Army veteran and a resident of

Texas. (Doc. 1 ¶¶ 4, 43.) On October 2, 2023, he began receiving unsolicited phone calls. (Id. ¶ 36.) When he answered the first call, "there was a long delay, followed by a pause and a computerized noise." (Id. ¶ 37.) Cunningham identified this as a characteristic feature of "an Asterisk-based phone system" dialing a randomly or sequentially generated number. (Id. ¶¶ 37-38.)

Cunningham claims that the call came from Sean Martin and that Martin is an agent of Sokolove. (Id. ¶¶ 41-42.) Martin asked Cunningham if he was interested in pursuing a claim against the government involving toxic exposures at Marine Corps Base Camp Lejeune. (Id. ¶ 41.) Cunningham was never stationed at Camp Lejeune. (Id. ¶ 43.) Nevertheless, Martin guaranteed him a minimum payout of $150,000. (Id. ¶ 42.)

Martin sent an email directing Cunningham to submit information supporting "a fraudulent and fictitious Camp Lejeune injury claim" to the federal government. (Id. ¶ 45.) In the ensuing hours, Cunningham received multiple calls from agents of Sokolove who sought information about his potential claim. (Id. ¶¶ 46-50.) One caller "stated that Sokolove was 'partnering with' [Wallace & Graham] on the case" and requested permission to share Cunningham's information with the firm. (Id. ¶ 50.) Shortly thereafter, Cunningham received a proposed contingency agreement that contained Rhine, Wallace, Graham, Willliams, and Doby's

2

signatures.  (Id. ¶ 52.)  In the weeks that followed, Cunningham received a total of 43 phone calls and 4 text messages about the possible representation.  (Id. ¶ 33.)

Eventually, Cunningham made "an effort to resolve the matter and to ascertain the nature of the calls" by calling Wallace twice. (Id. ¶ 60.)  Wallace denied knowledge of the calls.  (Id. ¶ 61.) Cunningham asked Wallace and Rhine to provide him with copies of their do not call policies and to place him on their do not call lists.  (Id. ¶ 66.)  Both declined to produce the policies.  (Id. ¶ 67.)

Cunningham alleges that the calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., the TCPA's implementing regulations, 47 C.F.R. § 64.1200 et seq., and the North Carolina Telephone Solicitations Act ("NCTSA"), N.C. Gen. Stat. § 75-101 et seq. (Doc. 1 ¶¶ 83-100.)  Cunningham claims that each offending phone call and text message was the product of an Automatic Telephone Dialing System ("ATDS").  (Doc. 1 ¶¶ 13, 33, 73-76, 84-85.)

## II.  ANALYSIS

Defendants' motion seeks dismissal of the complaint in its entirety.[1]  Defendants advance three primary arguments.  First,

---

[1] Sokolove seeks dismissal of "Count I of the Complaint with the exception" of the first phone call and "Count III of the Complaint" with prejudice.  (Doc. 7 at 1.)  Sokolove has separately filed an answer. (Doc. 9.)

they argue that all claims against LeBlanc should be dismissed because Cunningham did not properly serve him. (Doc. 8 at 4.) Second, they contend that Cunningham failed to state a viable TCPA claim. (Id. at 7–15.) Lastly, they argue that Cunningham, a Texas resident, cannot bring claims that seek to enforce the NCTSA. (Id. at 16–18.) Each ground will be addressed in turn.

**A. Service of Process on Leblanc**

Leblanc argues that the court lacks jurisdiction over him because he was not properly served. (Id. at 4.) Cunningham concedes that "Leblanc was not formally served" with a summons and complaint, but he argues that Leblanc's former counsel waived service. (Doc. 12 at 2–3.) More specifically, when LeBlanc's former counsel requested consent to his motion for an extension of time to respond to the complaint, Cunningham's counsel responded that his consent was contingent on counsel "waiving service as to any remaining defendants" that had not been served. (Doc. 12-2 at 2.) Leblanc's counsel responded that he was "not authorized to accept service yet" but would discuss the issue with his client. (Id.)

As Leblanc properly notes, this is insufficient evidence of consent to waive service. Thus, Leblanc's motion will be granted, and the complaint against him will be dismissed without prejudice. See Fed. Deposit Ins. Corp. v. Schaffer, 731 F.2d 1134, 1135–36 (4th Cir. 1984) ("Absent effective service of process, a court is

4

without jurisdiction to render a personal judgment against a defendant." (citing <u>Hutchinson v. United States</u>, 677 F.2d 1322, 1328 (9th Cir. 1982))). To the extent Cunningham argues in the alternative he should be granted an extension of time to serve LeBlanc (Doc. 12 at 3), he may file a proper motion. <u>See</u> Fed. R. Civ. P. 4(m).

**B. TCPA Claim**

Next, Defendants argue the complaint fails to plausibly plead violations of the TCPA. Defendants levy three principal objections to Cunningham's TCPA claim: (1) Cunningham has not alleged that the Individual Defendants caused or directed the telemarking efforts, (2) Cunningham has not plausibly alleged that Wallace & Graham or the Rhine Law Firm are vicariously liable for any violations, and (3) Cunningham has not plausibly alleged that Defendants used an ATDS to call him. (Doc. 8 at 2–3.) Cunningham contends he has plausibly stated each of these claims. (Doc. 12. at 7–15.)

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. (citing Twombly, 550 U.S. at 556 (2007)). A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted).

Cunningham's complaint alleges a plausible TCPA claim. Defendants' argument that Cunningham "fail[ed] to plead that any individual defendant's involvement was significant, that any exercised active oversight, or that any had knowledge of or direct participation in the alleged unsolicited calls" is contrary to the complaint. (Doc. 8 at 10.) The complaint alleges that LeBlanc "mastermind[ed]" the supposedly "illegal telemarketing scheme" and that the Individual Defendants "personally participated in the actions" described in the complaint by signing the retainer agreement sent following the calls, personally contacting Cunningham to persuade him to sign the agreement, "overseeing the corporate Defendants' marketing efforts," and "generating business from and personally supporting the telemarketing calls." (Doc. 1 ¶¶ 32, 72.) At this early stage, the court finds that Cunningham has plausibly alleged that the Individual Defendants personally participated in the alleged TCPA violations.

Defendants contend that Cunningham did not plausibly plead a basis to hold Wallace & Graham, Rhine Law Firm, and Sokolove liable for any allegedly improper calls. But, as Defendants concede, "a

company can be held liable for calls made on its behalf, even if not placed by the company directly." (Doc. 8 at 10 (quoting Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 659 (4th Cir. 2019)). The complaint alleges that Sokolove partnered with Wallace & Graham to solicit Camp Lejeune claimants through telemarketing efforts and that Wallace & Graham and Rhine Law Firm were both signatories of the proposed retainer agreement sent to Cunningham after the calls. (Doc. 1 ¶¶ 50, 52.) These allegations, which must be accepted as true, provide a sufficient basis for "draw[ing] the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Defendants also admit that Cunningham plausibly pleaded that the first phone call he received was made using ATDS equipment. (Doc. 8 at 15.) But they dispute that the ensuing calls he received from the same phone number were made using an ATDS. (Id.) Whether Defendants used equipment that qualifies as an ATDS for each subsequent call is an issue of fact not suitable for resolution at this stage. Cunningham bears the eventual burden of demonstrating that each violative call came from ATDS equipment. See Facebook, Inc. v. Duguid, 592 U.S. 395, 399 (2021) (noting the system "must have the capacity to either store a telephone number using a random or sequential generator or to produce a telephone number using a random sequential number generator"). Having plausibly alleged that at least one call was made using an ATDS, Cunningham has

7

pleaded a plausible claim for relief under the TCPA.

**C.  NCTSA Claim**

Finally, Defendants argue that Cunningham's claim pursuant to the NCSTA should be dismissed because its terms only cover North Carolina telephone subscribers, which he is not.  (Doc. 8 at 16–17.)  Their argument relies on the NCTSA's regulation of "telephone solicitor[s]" who are "doing business in this State."  N.C. Gen. Stat. § 75-101(10).  The act defines "doing business in [the] State," as "mak[ing] or caus[ing] to be made any telephone solicitation <u>to North Carolina telephone subscribers</u>, whether the telephone solicitations are made from a location inside North Carolina or outside North Carolina."  <u>Id.</u> § 75-101(4) (emphasis added).  Because Cunningham does not claim to be a North Carolina subscriber, Defendants argue, he cannot seek the act's protection.  (Doc. 8 at 16–17.)

Cunningham responds that the statute's "plain text" clearly applies to "residents of North Carolina and non-residents alike." (Doc. 12 at 15.)  He notes that the act regulates telephone solicitations to a "telephone subscriber" — not a more specific reference to a <u>North Carolina</u> telephone subscriber — and claims that this phrasing expands the statute's territorial reach.  (<u>Id.</u> at 16–17; <u>see</u> N.C. Gen. Stat. § 75-102(a).)  He further contends that the act applies to "telephone solicitor[s]," a category that includes parties defined as "telemarketer[s]" under the Federal

8

Telemarketing Sales Rule, 16 C.F.R. § 310, without reference to whether they do business in the state.  (Id. at 15-16.)

In regulating persons and businesses who solicit "North Carolina telephone subscribers," the General Assembly appears to have sought to protect North Carolinians.  See N.C. Gen. Stat. § 75-100(9) (finding that "[t]he public interest requires . . . additional protections for North Carolina residents who enter into consumer transactions initiated through telephone solicitations") (emphasis added).  Cunningham's argument to the contrary would potentially extend the act to all persons outside the State.  Such an argument would require the court to read "telephone subscriber"[2] more broadly than the act seems to contemplate.  There is no indication the General Assembly contemplated such extra-territorial reach and, while the parties did not brief the issue, there is authority that the courts of North Carolina recognize a presumption against extra-territorial application of state law.  See, e.g., Sawyer v. Market Am., Inc., 661 S.E.2d 750, 754 (N.C. Ct. App. 2008) (denying extra-territorial reach of North Carolina Wage and Hour Act to non-resident who neither worked nor lived in North Carolina).  The North Carolina Supreme Court has stated that

---

[2] The statute defines an "[u]nsolicited telephone call" as one "made by a person to a telephone subscriber" without permission.  N.C. Gen. Stat. § 75-101(12).  A "telephone subscriber" is "[a]n individual who subscribes to a residential telephone service from a local exchange company, a competing local provider certified to do business in North Carolina, or a wireless telephone company; or the individuals living or residing with that individual."  Id. § 75-101(11).

9

"general words used in statutes are taken as limited to cases within the jurisdiction of the Legislature passing the statute, and confining its operation to matters affecting persons and property in such jurisdiction." McCullough v. Scott, 109 S.E. 789, 796 (N.C. 1921).

Cunningham's argument that the NCSTA extends to out—of—state telephone subscribers appears doubtful, at best. But because the parties did not brief North Carolina law on extra—territorial reach of its statutes, the court declines to dismiss the claim on that basis at this stage.

Defendants' other arguments for dismissal of Cunningham's NCTSA claim are unavailing, if the act applies. Defendants argue that Cunningham failed to allege that the calls were placed using equipment that qualifies as a "recorded message player" pursuant to the NCTSA. (Doc. 8 at 17.) But, as Cunningham points out, he sued for a violation of N.C. Gen. Stat. § 75-102, which applies to telephone solicitations generally, rather than § 75-104, which applies specifically to unwanted solicitations that use automatic dialers and recorded message players. (Doc. 12 at 17–18.) Defendants have not demonstrated how the act's definition of "recorded message player" in N.C. Gen. Stat. § 75-101(2) is material to Cunningham's claim. Further, Defendants' contention that Cunningham failed to allege that they demonstrated "authority or control" over the calls is unpersuasive. As noted, Cunningham

10

alleges that Defendants all sought to have him sign a retainer agreement and that the Defendants coordinated the calls in tandem to solicit Camp Lejeune claimants such as him. (Doc. 1 ¶¶ 50, 52.)

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Defendants' motion to dismiss (Doc. 7) is GRANTED as to Defendant LeBlanc, against whom the complaint is DISMISSED WITHOUT PREJUDICE, but is otherwise DENIED.


       /s/   Thomas D. Schroeder
       United States District Judge

November 19, 2024